UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUZ A.,<br><br>    Plaintiff,<br><br>    v.<br><br>ANDREW M. SAUL, Commissioner of Social Security Administration,<br><br>    Defendant. | Case No. SA CV 19-06-SP<br><br>MEMORANDUM OPINION AND ORDER |

**I.**

**INTRODUCTION**

On January 3, 2019, plaintiff Luz A. filed a complaint against the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). The parties have fully briefed the issues in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two issues for decision: (1) whether the Administrative Law Judge ("ALJ") properly assessed the opinions of two treating or examining physicians; and (2) whether the ALJ failed to develop the record. Memorandum in

1

Support of Plaintiff's Complaint ("P. Mem.") at 2-6; *see* Defendant's Memorandum in Support of Answer ("D. Mem.") at 1-6.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that the ALJ properly assessed the physicians' opinions and was not required to further develop the record. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 45 years old on the alleged disability onset date, has a high school education. AR at 44, 60, 73. Plaintiff has past relevant work as a deli counter worker. *Id.* at 53.

On April 30, 2015, plaintiff filed applications for a period of disability, DIB, and SSI alleging an onset date of August 29, 2011 due to a neck injury, bilateral knee and feet problems and pain, injuries in the bilateral elbows, hands, and wrists, right shoulder injury, osteoarthritis, diabetes, high blood pressure, high cholesterol, depression, and anxiety. *Id.* at 60-61, 76-77. The Commissioner denied plaintiff's applications initially, and upon reconsideration, after which she filed a request for a hearing. *Id.* at 126-42.

On November 7, 2017, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 41-58. The ALJ also heard testimony from Dr. Luis Mas, a vocational expert. *Id.* at 52-58. On December 27, 2017, the ALJ denied plaintiff's claims for benefits. *Id.* at 22-35.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since August 29, 2011, the alleged onset date. *Id.* at 25.

At step two, the ALJ found plaintiff suffered from the following severe impairments: degenerative joint disease of the bilateral knees; prior fracture of left

distal radius, status-post surgical correction; cervical and lumbar sprain/strain; hypertension; diabetes mellitus; obesity; major depressive disorder; and anxiety disorder. *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id.* at 25-26.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined she had the RFC to perform a range of light work, with the limitations that she: could lift and carry 20 pounds occasionally and 10 pounds frequently; could stand and walk for two hours out of an eight-hour workday with normal breaks; could sit for eight hours out of an eight-hour workday with normal breaks; could perform postural activities occasionally, but could not climb ladders, ropes, and scaffolds; could not walk on uneven terrain; could frequently perform fine and gross manipulation bilaterally; and was limited to simple tasks and frequent interaction with coworkers, supervisors, and the public. *Id.* at 26-27.

The ALJ found, at step four, that plaintiff was unable to perform her past relevant work as a deli counter worker. *Id.* at 32.

At step five, the ALJ found that, given plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including counter clerk and salon attendant. *Id.* at 33-34. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 34.

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-8. The ALJ's decision stands as the final decision of the Commissioner.

## III.
## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

# IV.

# DISCUSSION

### A. The ALJ Properly Weighed the Medical Opinions

Plaintiff argues the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting the opinions of Dr. Moheimani and Dr. Calhoun.  P. Mem. at 2-4.  More specifically, plaintiff argues the reason provided by the ALJ for discounting their opinions – that their opined limitations were overly restrictive and inconsistent with plaintiff's treatment history and contemporaneous examination findings – is insufficient because plaintiff's treatment history and examinations in fact support the opined limitations.  *Id.*  Because plaintiff's medical record is extensive, only those notes and findings relevant to the present issue are discussed below.

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence.  20 C.F.R. §§ 404.1527(b), 416.927(b).[2]  In evaluating medical opinions, the regulations distinguish among three types of physicians:  (1) treating physicians; (2) examining physicians; and (3) non-examining physicians.  20 C.F.R. §§ 404.1527(c), (e), 416.926(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(1)-(2), 416. 927(c)(1)-(2).  The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant.  *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

---

[2]  All citations to the Code of Federal Regulations refer to regulations applicable to claims filed before March 27, 2017.

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066-67 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

### 1. Medical Opinions and Records

*Dr. A. Michael Moheimani*

Dr. Michael Moheimani, an orthopedic surgeon, evaluated plaintiff on November 27, 2012 and December 21, 2012 in connection with her worker's compensation claims. AR at 482-93, 731-44. Although plaintiff identifies Dr. Moheimani as her treating physician (*see* P. Mem. at 2-4), apart from the two evaluations in the record, there is no other indication of plaintiff being regularly treated by Dr. Moheimani. Nonetheless, Dr. Moheimani was designated a primary treating physician. *See* AR at 482-85.

Dr. Moheimani examined plaintiff and conducted a comprehensive initial orthopedic consultation on November 27, 2012. *Id.* at 486-93. Plaintiff complained of aching pain in her bilateral elbows, neck, right shoulder, upper back, lower back, calves, and knees. *Id.* at 486. Plaintiff reported the symptoms in her knees worsened while walking, standing, sitting, and squatting, and she had weakness in her entire body as well as swelling, inflammation, and grinding in her knees. *Id.* Based on a twelve-point review of plaintiff's systems, Dr. Moheimani

found all symptoms were negative except for the following: chest pains, sleep disruption, shortness of breath, bladder problems, bowel problems, and vision problems. *Id.* at 487. After examining plaintiff and reviewing x-rays and MRIs of plaintiff's spine, wrists, and knees, Dr. Moheimani diagnosed plaintiff with left knee osteoarthritis, right knee osteoarthritis with medial meniscal tear, cervical degenerative disc disease, and a lumbosacral strain. *Id.* at 492. Dr. Moheimani opined plaintiff was capable of performing only sedentary work. *Id.*

During a second examination on December 21, 2012, plaintiff presented for a physical for a right knee arthroscopy scheduled for December 27, 2012. *Id.* at 482-83. The examination notes indicate plaintiff's surgery was postponed because her case was not accepted. *Id.* at 483. Based on a twelve-point review of plaintiff's systems, Dr. Moheimani found all symptoms were negative except for the following: joint pain, numbness, ab pain, sore throat, sleep disruption, depression, fatigue, headache, and nervousness. *Id.* at 482. Dr. Moheimani again diagnosed plaintiff with cervical degenerative disc disease, lumbosacral strain, left knee osteoarthritis, and right knee osteoarthritis with medial meniscal tear. *Id.* at 483. Dr. Moheimani opined plaintiff could return to modified work on December 21, 2012 with the limitation that plaintiff could only perform sedentary work. *Id.* at 484.

*Dr. Kevin Calhoun*

Dr. Kevin Calhoun evaluated plaintiff on May 8, 2013 and June 5, 2013 in connection with her worker's compensation claims. *Id.* at 494-502, 636-44. As with Dr. Moheimani, although plaintiff identifies Dr. Calhoun as a treating physician, there is no indication in the record that plaintiff was seen by Dr. Calhoun other than for the evaluations in May and June 2013, yet he too was designated a primary treating physician. *See id.*

During an examination on May 8, 2013, plaintiff presented with the following complaints: continuous pain in her neck, shoulders, arms, low back, and

knees; intermittent pain in the bilateral feet; anxiety; depression; insomnia; nervousness; and frustration from work-related trauma and stress. *Id.* at 496-97. A physical examination of plaintiff revealed pain with passive extension of the left knee, pain in the right knee, and that plaintiff had a full range of motion in both knees but with pain and swelling. *Id.* at 498. Dr. Calhoun diagnosed plaintiff with a bilateral knee medial meniscus tear, and enthesopathy of the bilateral knees. *Id.* Dr. Calhoun opined plaintiff was able to return to her modified work duties with the limitations that plaintiff could not stoop, bend, kneel, crawl, or walk on uneven surfaces, and could not stand for more than 10 minutes, with plaintiff advised to sit or stand as needed. *Id.* at 499.

During an examination on June 5, 2013, plaintiff presented with the following complaints: pain in the cervical spine, lumbar spine, and bilateral knees. *Id.* at 636. Plaintiff reported the bilateral knee pain was persistent, and the pain in her lumbar spine radiated to the left leg. *Id.* After examining plaintiff, Dr. Calhoun diagnosed plaintiff with cervicalgia, lumbago, bilateral knee medial meniscus tear, and bilateral knee enthesopathy. *Id.* at 639. Dr. Calhoun opined plaintiff was totally temporarily disabled from June 5, 2013 through July 25, 2013. *Id.*

*Dr. Payam Moazzaz*

Dr. Payam Moazzaz, an orthopedic surgeon, completed an orthopedic consultation of plaintiff on March 10, 2013. *Id.* at 476-81. Dr. Moazzaz diagnosed plaintiff with left knee degenerative joint disease with meniscal tears, spondylolisthesis, and lumbar degenerative disc disease. *Id.* at 479. Dr. Moazzaz opined plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for six hours in an eight-hour work day, sit for six hours in an eight-hour workday with normal breaks, and occasionally bend, kneel, stoop, crawl, and crouch. *Id.* at 480. Dr. Moazzaz further opined plaintiff could perform overhead activities on an unrestricted basis, had full use of her hands for fine and

1 | gross manipulation, and did not require the use of an assistive ambulatory device.
2 | *Id.*

### *Dr. Zaven Bilezikjian*

Dr. Zaven Bilezikjian, an orthopedic surgeon, completed an orthopedic consultation of plaintiff on August 18, 2015. *Id.* at 908-13. Plaintiff complained of bilateral knee pain, low back pain, neck pain, right shoulder pain, right foot pain, and bilateral hand pain and numbness. *Id.* at 908-09. Dr. Bilezikjian diagnosed plaintiff with severe bilateral arthritis with varus deformities, probable early carpal tunnel syndrome, cervical and lumbosacral strain/sprain, and recent right foot pain of unknown etiology. *Id.* at 911-12. Dr. Bilezikjian opined plaintiff could push, pull, lift, and carry 20 pounds occasionally and 10 pounds frequently, walk and stand for two hours per day, occasionally bend, stoop, kneel, and squat, frequently perform fine and gross manipulation, and could not walk on uneven terrain or climb ladders. *Id.* at 912. Dr. Bilezikjian further opined plaintiff did not require an assistance ambulatory device, and could sit without restrictions. *Id.*

### *Other Medical Treatment*

Plaintiff has received medical treatment from a range of physicians at different clinics. From June to November 2012, plaintiff was treated by various physicians at Southland Spine & Rehabilitation Medical Center for her shoulder, neck, back, and knee pain with cortisone injections in her knees (*see, e.g., id.* at 527) and anti-inflammatory medication (*see, e.g., id.* at 578, 608). *Id.* at 527-635. Acupuncture and physical therapy were also recommended at various times to treat plaintiff's pain. *See, e.g., id.* at 551, 608.

Plaintiff was treated by various physicians at Pacific Cardiovascular Associates on December 26, 2013, February 7, 2014, and May 29, 2014 for her complaints of hypertension, chest pain, and palpitations/arrhythmias. *Id.* at 646-58. Plaintiff was prescribed medication to treat her palpitations and chest pain. *Id.*

Plaintiff was also treated by physicians at Anaheim Regional Medical Center for several emergency room admissions as well as routine screenings such as mammograms from March 2013 to February 2014. *Id.* at 659-730. Plaintiff's emergency room admissions were for complaints including fatigue, nervousness, dizziness, and body aches (*id.* at 671-76), chest pain and anxiety (*id.* at 662-70), and nausea, vomiting, diarrhea, and abdominal pain (*id.* at 677-91). The treatment notes for plaintiff's emergency room admissions are not entirely clear, but it appears plaintiff was prescribed medication and discharged later that day for all of her admissions. *Id.* at 662-730.

Plaintiff was treated by various physicians at Gateway Medical Center from October 2014 to December 2015 for her knee, shoulder, and neck pain. *Id.* at 942-87. Plaintiff was recommended physical therapy, home exercises, a left knee brace, lubricant and corticosteroid injections, and medication. *Id.*

Plaintiff was evaluated by various physicians at Orange County Memorial Medical Center from October 2016 to May 2017 in advance of a back surgery scheduled for May 2017. *Id.* at 988-1030.

*Dr. Gina Wilvang*

Dr. Gina Wilvang, a D.P.M, opined on October 3, 2017 that plaintiff suffers from multiple foot and ankle conditions including diabetic peripheral neuropathy, venous insufficiency, and chronic instability, and is unable to bear weight for extensive periods of time. *Id.* at 1031. Apart from Dr. Wilvang's October 3 note, the record does not include any other indication that plaintiff was treated by Dr. Wilvang.

*Dr. Ryan Fan*

Dr. Ryan Fan examined plaintiff on October 9, 2017 and opined that plaintiff has severe bone-on-bone bilateral knee arthritis and is very limited in her ambulation. *Id.* at 1032. Apart from Dr. Fan's October 9 note, the record does not include any other indication that plaintiff was treated by Dr. Fan.

*State Agency Physicians*

State agency physicians Alicia V. Blando and D. Chan opined plaintiff could: lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for two hours; sit for about six hours in an eight-hour workday; perform unlimited pushing and pulling other than as shown for lifting and carrying; occasionally climb, balance, stoop, kneel, crouch, and crawl; could perform limited fine and gross manipulation; had no environmental limitations; but must avoid even moderate exposure to hazards and could not walk on uneven terrain or climb ladders. *Id.* at 69-71, 85-87, 101-03, 117-19.

### 2. The ALJ's Findings

The ALJ determined plaintiff had the physical RFC to perform a range of light work with the limitations that she could: lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for two hours out of an eight-hour workday with normal breaks; sit for eight hours out of an eight-hour workday with normal breaks; frequently perform fine and gross manipulation bilaterally; occasionally perform postural activities, but could not climb ladders, ropes, and scaffolds; and could not walk on uneven terrain. *Id.* at 26. In reaching his physical RFC determination, the ALJ gave greatest weight to the opinions of Dr. Bilezikjian and the determinations of the state agency medical consultants. *Id.* at 31.

The ALJ gave some weight to the opinion of Dr. Moazzaz because it was not inconsistent with the objective medical evidence and opinions of a second consultative orthopedic examiner and state agency medical consultants, but treatment notes subsequent to Dr. Moazzaz's evaluation indicated that further limitations on plaintiff's ability to stand, walk, and manipulate objects were warranted. *Id.* at 29. The ALJ gave minimal weight to the opinion of Dr. Wilvang because the record does not contain any treatment notes from Dr. Wilvang or any longitudinal history of foot pain, plaintiff had normal examinations of the lower extremities in 2013 and 2015, and Dr. Wilvang's assessment was vague as to the

length of time plaintiff was capable of bearing weight. *Id.* at 30. The ALJ gave limited weight to the opinion of Dr. Fan because it was vague and did not include any objective findings. *Id.* at 30-31.

As for the opinions of Dr. Moheimani and Dr. Calhoun, the ALJ did not explicitly reject their opinions by their names. Instead, the ALJ referenced certain exhibits in the record and assigned the medical opinions contained therein little weight. *Id.* at 28-89. These exhibits included those containing the opinions of Drs. Moheimani and Calhoun. *Id.* The ALJ gave these opinions little weight because they were "overly restrictive and inconsistent with the claimant's treatment history and examination findings at the time they were provided." *Id.* at 28. The ALJ also stated a finding that plaintiff was "totally temporarily disabled" in the context of a worker's compensation case was "not relevant or binding with regard to an application under the Social Security Act." *Id.* at 29.

Plaintiff does not challenge the ALJ's disregard of Dr. Calhoun's finding that plaintiff was totally temporarily disabled in June 2013, and with reason. An "ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the terminology used in such proceedings." *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002) (citation omitted). But an ALJ is not bound to accept or apply a workers' compensation physician's status designation, such as temporary total disability, because such terms of art are "not equivalent to Social Security disability terminology." *Dawson v. Colvin*, 2014 WL 5420178, at *5 (C.D. Cal. Oct. 23, 2014) (citing *Desrosiers v. Secretary of Health & Human Services*, 846 F.2d 573, 576 (9th Cir. 1988); *Macri v. Chater*, 93 F.3d 530, 544 (9th Cir. 1996); *Booth*, 181 F. Supp. 2d at 1104); *see also* 20 C.F.R. § 404.1504. Here, while finding the determination of total temporary disability to be irrelevant, the ALJ stated he nonetheless considered the evidence used by the physicians in the worker's compensation case. AR at 29. It is the ALJ's assignment of little

weight to Drs. Moheimani's and Calhoun's opinions that limited plaintiff to sedentary work that plaintiff challenges.

As stated, the ALJ found their opinions were overly restrictive and inconsistent with plaintiff's treatment history and examination findings at the time they were provided. *Id.* at 28. Clinical findings from 2012 and 2013 indicated plaintiff had bilateral knee joint line tenderness, varus deformities, a positive McMurray's test in both knees, and positive Hawkins and Neer tests of her bilateral shoulders. *Id.* at 483, 489, 491, 533. During an examination on November 27, 2012, Dr. Moheimani observed a limping gait, but only a month earlier a physician at the Southland Spine & Rehabilitation Medical Center observed her to have a normal gait. *Id.* at 420, 490. Diagnostic imaging studies of plaintiff's cervical spine, knees, and wrists revealed a posterior spur with neuroforaminal encroachment bilaterally, patellofemoral arthritis in the left knee, meniscus tears, and moderate joint effusion in both knees. *Id.* at 491, 745-46, 749-50. Plaintiff's clinical findings and imaging studies from 2012 and 2013 are not plainly inconsistent with the sedentary or less-than-sedentary restrictions opined by Drs. Moheimani and Calhoun, although they also do not necessarily support such level of restriction.

But it was particular portions of plaintiff's treatment history that the ALJ specifically cited in stating he gave little weight to Drs. Moheimani's and Calhoun's opinions. *See id.* at 28. The ALJ specifically pointed to plaintiff's lack of surgery and apparent ability to manage her pain with medication as inconsistent with the severe restrictions opined by Drs. Moheimani and Calhoun. Treatment notes from a complete orthopedic consultation on March 10, 2013 stated that plaintiff was only taking tramadol and cyclobenzaprine in 2013 for her pain, which the ALJ found "an indication that her pain level was managed well with conservative treatment." *Id.* at 28, 477. Right knee arthroscopic surgery was recommended during an examination on September 19, 2012, but plaintiff testified

at the hearing that she did not undergo the surgery. *Id.* at 28, 50-51, 465. The ALJ also accurately noted there is no indication in the record that plaintiff underwent any surgical intervention or significant treatment for her upper extremities, neck, or back issues during the relevant time period. *Id.* at 28.

Accordingly, the ALJ's determination that plaintiff's treatment history was inconsistent with the level of restriction opined by Drs. Moheimani and Calhoun was supported by substantial evidence and a specific and legitimate reason to discount their opinions.

### B.     The ALJ Did Not Err in Not Further Developing the Record

Plaintiff contends the ALJ erred by failing to fully and fully develop the record by requesting additional records from Dr. Wilvang. P. Mem. at 5-6.

An "ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983) (citation omitted). Yet plaintiff has the burden of "furnish[ing] medical and other evidence that [the Commissioner] can use to reach conclusions about [plaintiff's] medical impairments(s)." *Mayes,* 276 F.3d at 459 (quoting 20 C.F.R. § 404.1512(a)). Plaintiff may not shift his burden of production to the ALJ. *Id.*; *see* 42 U.S.C. § 423(d)(5).

The duty to further develop the record is triggered when the record is ambiguous or otherwise inadequate. *See Webb*, 433 F.3d at 687; *see also Mayes*, 276 F.3d at 459-60 (ALJ has a duty to develop the record further only "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence"). Generally, the ALJ fulfills this duty by making a reasonable attempt to obtain additional medical evidence from the claimant's treating sources, ordering a consultative examination where the medical evidence is incomplete or unclear, or subpoenaing the claimant's physicians or their records. *Tonapetyan*, 242 F.3d at 1150.

Here, there was no ambiguity that warranted further development of the record. Plaintiff argues Dr. Wilvang was her treating physician, and the absence of treatment notes in the record from Dr. Wilvang meant that "vital medical evidence" was missing from the record at the time of the ALJ's decision. P. Mem. at 5-6. As an initial matter, there is no indication that Dr. Wilvang was plaintiff's treating physician. The record only contains a single brief treatment note from Dr. Wilvang on October 3, 2017, a date that in any event was after plaintiff's date last insured. Dr. Wilvang's note diagnoses plaintiff with multiple foot and ankle conditions including diabetic peripheral neuropathy, venous insufficiency, and chronic instability, and opines she is unable to bear weight for extensive periods of time. *Id.* at 1031. But the note is brief and includes no explanation of the findings on which these diagnoses and opined limitations were based. *Id.* Furthermore, the October 3, 2017 treatment note is vague as to what Dr. Wilvang meant by plaintiff being unable to bear weight for extensive periods of time. Given that plaintiff's medical history includes no indication of a history of foot pain, there was no reason for the ALJ to believe there was ambiguity that warranted further development of the record.

As such, the ALJ had no duty to further develop the record.

## V.
## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED: May 22, 2020

_____
SHERI PYM
United States Magistrate Judge